UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

DEC 16 2004

Michael N. Milby, Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SUN'S MOTORCAR GROUP, LLC, | § | **H-04-4736** |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| QRS AUTO GROUP, INC., | § | |
| SHAO GUANG HE A/K/A | § | |
| DAVID HO AND GUANGZHOU | § | |
| KAISI INVESTMENT CO., | § | |
| LTD. A/K/A GUANGZHOUSHI | § | |
| KAISI TOUZI YOUXIAN | § | |
| GONGSI, | § | |
| Defendants. | § | |

## DEFENDANTS' NOTICE OF REMOVAL

Defendants file this notice of removal under 28 U.S.C. §1446(a).

1.     Defendants, QRS Auto Group, Inc., Shao Guang He A/K/A David Ho and Guangzhou Kaisi Investment Co., Ltd. A/K/A Guangshoushi Kaisi Touzi Youxian Gongsi, by their undersigned attorney, respectfully show this Court:

2.     On August 24, 2004, Cause No. 2004-45475 was commenced against Defendants in the 113th District Court of Harris County, Texas, and is now pending therein.

3.     Defendants have not been served with Plaintiff's Original Petition in the above-entitled action but have now chosen to file their Answer and Counterclaim

1

pursuant to recent conversations and an understanding with attorney for plaintiff.

4.     As of the date of this filing, no pleadings have been filed in the state court action other than the Plaintiff's petition.  Copies of all process, pleadings and orders served upon Defendants in the above-entitled action are attached hereto as Exhibit A, and filed herewith.

5.     This Court has original jurisdiction of the above-entitled action pursuant to 28 U.S.C. §1331, and the action may therefore be removed to this Court pursuant to 28 U.S.C. §1441(b).

6.     Removal is proper because defendant's counterclaim (i.e., the seventh count) involves a federal question. Specifically, defendant's counterclaim arises under 15 U.S.C. §1114, et seq.

WHEREFORE, Defendants pray that the above-entitled action be removed from the 113th District Court of Harris County, Texas to this Court.

Respectfully submitted,

By:_____
Craig Corsini
Attorney-in-Charge
Texas Bar No. 24012459
Southern District Bar No:  29242
Morris Tabak
TBN: 19599900
Southern District Bar No: 25578
5800 Ranchester, Suite 200

Houston, Texas 77036
Tel. (713)-988-5666
Fax. (713)-988-8846
Attorney for Defendants
QRS Auto Group, Inc., Shao Guang He
A/K/A David Ho and Guangzhou Kaisi
Investment Co., Ltd. A/K/A Gu

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 14, 2004, a true and correct copy of Defendants' Notice of Removal was served by Sterling Express on Arne Ray at 5100 Westheimer, Suite 115, Houston, Texas 77056.

Craig Corsini

CAUSE NO. **2004-45475**

| | | |
|---|---|---|
| SUN'S MOTORCAR GROUP, LLC | § | IN THE DISTRICT COURT OF |
| and TIELIN SUN | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| QRS AUTO GROUP, INC., | § | |
| SHAO GUANG HE A/K/A DAVID HO | § | |
| and GUANGZHOU KAISI | § | |
| INVESTMENT CO., LTD. A/KA | § | |
| GUANGZHOUSHI KAISI TOUZI | § | |
| YOUXIAN GONGSI | § | 113 JUDICIAL DISTRICT |

## ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, SUN'S MOTORCAR GROUP, LLC ("SUN") and TIELIN SUN ("Tielin"), Plaintiffs, complaining of QRS AUTO GROUP, INC. ("QRS") and SHAO GUANG HE A/K/A DAVID HO ("Ho") and GUANGZHOU KAISI INVESTMENT CO., LTD. ("Kaisi"), whose actual name in Chinese is attached hereto as Exhibit "A" and is incorporated herein by reference, in hace verba, Defendants, and for cause of action shows:

I.

Plaintiff, SUN'S MOTORCAR GROUP, INC., is a Texas limited liability company with offices in Houston, Harris County, Texas located at 6814 Gant Road, Houston, Texas 77066.

Plaintiff, TIELIN SUN, is an individual who resides in Houston, Harris County, Texas.

**Exhibit A**

Defendant, QRS AUTO GROUP, INC.. is a Texas Corporation which may be served with process by serving Hao Jiang, its registered agent, at 5829 W. Sam Houston Parkway North, Suite 303, Houston, Texas 77041.

Defendant, SHAO GUANG HE A/K/A DAVID HO, is an individual who may be served with process at his residence at 2530 Briar Ridge #32, Houston, Texas 77057.

Defendant, GUANGZHOU KAISI INVESTMENT CO., LTD., is a Chinese Corporation which may be served under Texas Rule of Civil Procedure 108(a).

Discovery is intended to be conducted under level two of TRCP 190.

II.

**Facts**

On August 16, 2002, QRS Auto Group, Inc. was incorporated by Tielin Sun. On June 6, 2003, the Kaisi Board of Directors (Kaisi is now the Chinese parent of QRS) resolved to acquire QRS as its American subsidiary and to authorize QRS to invest $1 million dollars to purchase 51% of Sun's Motorcar Group, LLC. Mr. Gang Yu was authorized by such resolution to effect the investment of One Million Dollars ($1,000,000.00) into SUN.

On July 11, 2003, as a result of such resolution, and the verbal agreement of the Plaintiffs and the Defendants, Sun's Motorcar Group, LLC was formed as a limited liability company in the State of Texas. Tielin Sun and QRS, both at 6814 Gant Road, Suite 124, Houston, Texas 77066 are listed as managers and are the only members.

On July 15, 2003, in furtherance of the board resolution and the verbal agreement of the parties, Sun's Auto (a d/b/a of Tielin Sun) executed a Transfer of Business Assets Agreement to Sun's Motorcar Group, LLC transferring over $600,000 dollars in inventory

2

and accounts receivable to SUN. It was understood at this point in time that Kaisi would invest $1 million in cash into SUN, as authorized by its board resolution. Additional negotiations between Kaisi, Tielin Sun and Shao Guang He a/k/a David Ho took place where the automotive wheel section of SUN would be separated, and the ownership would be Kaisi 60%, (through its American subsidiary QRS), Tielin Sun 20% and Ho 20%. For his 20% interest, Ho was to invest $40,000.00 into the wheel division.

In furtherance of this agreement, and on July 22, 2003, Tielin Sun resigned from the QRS Board of Directors and Kaisi authorized payment to Mr. Sun and payment was made to cover his expenses in establishing QRS.

On August 22, 2003, Gang Yu (the authorized representative of Kaisi), Tielin Sun, David Ho (who is also known as Shao Guang He) and Ruxin Song, as agent for QRS, met at SUN and reviewed and approved the Operating Agreement for Sun's Motorcar Group, LLC.

Thereafter, Mr. Tielin Sun took steps to comply with the agreement entered into orally and the resolutions explicitly given in furtherance of the new relationship. Mr. Tielin Sun gave Ho and QRS proprietary information concerning the automotive business, delivered the designs of the wheels that he had originated as early as April 2003 to Ho and QRS, and transferred over $600,000 of assets to the newly formed entity ("SUN") he had registered with the Secretary of State, with QRS as a joint manager and member, Then, Tielen Sun moved this operation into a new warehouse in reliance on the deal he had struck with QRS, he gave his customer list to QRS and Mr. Ho and did everything required in furtherance of the agreements and understandings between the parties hereto. In November of 2003, because of their position with SUN, Mr. Sun took Mr. Ho and Gang Yu to the largest after-market trade show, SEMA, in Las Vegas, Nevada. Mr. Ho and Mr. Yu were

quite excited about the benefits and opportunities of this new endeavor. After seeing the potential of the custom wheel business, Messrs. Ho and Gang Yu in partial performance of the agreement to invest as provided in the original resolution of the Board of Directors of Kaisi to invest $1,000,000.00 into SUN, a shipment of wheels ordered by SUN as a part of its one million dollar investment, and to pay for it. This shipment of wheels was originally ordered by SUN though Ho, as the agent for the manufacturer, but Kaisi through its U.S. Subsidiary, QRS, paid Ho and the supplier for these wheels as part of the agreed investment into SUN. The actual amount paid by Kaisi for these wheels is uncertain, but it is believed to be less than $150,000. However and thereafter, QRS and Mr. Ho did not comply with the agreement with Sun. QRS and Mr. Ho saw an opportunity to convert and obtain for their own benefit the goodwill and other assets that Sun had shared with them after the negotiations had resulted in a mutual agreement and board resolutions had been signed in reliance thereon. QRS and Mr. Ho went around Mr. Sun and began commandeering orders placed by SUN through Ho and diverting them directly to QRS, and by ordering the same wheels designed by Tielin and marketed by SUN for their own account with the BZO label owned by SUN; and have gone so far as to request that the exact wheels designed by Tielin be manufactured under a new label BFS, which is colorably similar to the BZO trade name. In summary, after obtaining the confidential and proprietary information of Sun, and promises of cash investment of $1 million dollars, and after all the agreements that were entered into orally and resolutions by QRS's parent company Kaisi, QRS and Mr. Ho no longer needed Tielin or Sun and have gone around him. QRS, Ho and Kaisi have stolen his designs, his trademark, his customers, all in defiance and breach of the agreements that Tielin had with Kaisi, QRS and Mr. Ho, and in Tielin's reliance on the mutual agreements,

4

the board resolutions, their word and their honor. As late as the filing of this complaint, the Defendants are still distributing products designed by Tielin and trademarked by SUN, they are even using product literature printed and distributed by the Plaintiff.

### III.

SUN is the owner of a trademark duly registered with the Secretary of State of Texas (5/15/2004) under the provisions of Section 16.01 and related sections of the Texas Business and Commerce Code, and is entitled to the exclusive use of the trademark in commerce in Texas and elsewhere in connection with the sale and manufacture of automotive wheels. A true copy of SUN's trademark application is attached as Exhibit "B". SUN is the owner of a trademark duly registered with the US Patent and Trademark Office having made said application on March 31, 2004 and is entitled to the exclusive use of the trademark in interstate commerce in the United States and elsewhere in connection with the sale and manufacture of automotive wheels. A true copy of SUN's trademark application is attached as Exhibit "C".

### IV.

At all times relevant, the Defendant Shao Guang He a/k/a David Ho, was the agent for the supplier of wheels from China, and was directly responsible for ordering wheels required and designed by SUN from the manufacturer in China. On or about March 1, 2004, SUN placed a renewal order for the wheels being marketed by SUN in Texas under the trade name of "BZO". In contravention of such order, and in bad faith, the Defendant David Ho conspired with the other Defendant QRS to divert the shipment of "BZO" wheels scheduled for delivery to SUN in April, 2004, and began marketing the same wheels to customers of SUN. The trademark and the wheel styles are the

proprietary property of SUN. The Plaintiffs learned for the first time in July of 2004 that the Defendants have attempted to register the tradename "BZO" with the United States Patent Office as early as February 6, 2004 in violation of the agreement that they had with Sun and Tielin. The Defendants never used any trademark of any kind in interstate commerce prior to filing their application in February.

V.

Defendants are now using a mark in Texas and in interstate commerce, a true and correct copy of which is attached as Exhibit "D" and incorporated by reference the same as if fully copied and set forth at length. The mark initially used by Defendants, comprised of the letters "BZO" is the exact imitation of and phonically identical to Plaintiffs' mark, "BZO". Defendants used the mark, and continue to use the mark, "BZO" in connection with the sale and advertising of automotive wheels in Texas and interstate commerce and applied the mark to automotive wheels manufactured to SUN specifications and designs.

VI.

Defendants' use of a mark and unique wheel products that are identical to SUN mark in connection with the sale and advertising of automotive wheels in Texas is likely to deceive and cause confusion or mistake as to the source or origin of the automotive wheels sold by SUN because the similarity of words and designs used and their identical sound is likely to cause SUN customers, in the exercise of ordinary care, to become confused as to the source of Defendants' automotive wheels, believing them to be those of SUN.

VII.

On or about June 1, 2004, and continuing to the present, Defendants have used a mark in Texas. The mark now used by Defendants comprised of the letters "BFS" is a colorable imitation of the SUN mark, "BZO". The Defendants have substituted "BFS" for "BZO" on the same identical wheels that are sold and advertised in the State of Texas and in interstate commerce by SUN.

VIII.

Defendants' use of a mark that is a colorable imitation of SUN mark in the connection with the sale and advertising of the identical automotive wheels in Texas is likely to cause confusion or mistake as to the source or origin of the automotive wheels sold by SUN because the similarity of letters used and their identical automotive wheel styles is likely to cause SUN customers, in the exercise of ordinary care, to become confused as to the source of Defendants' automotive wheels, believing them to be those of SUN.

IX.

On July 1, 2004, Plaintiffs, through their attorney, notified Defendants by letter (attached hereto as Exhibit "E") that since SUN's mark is registered with the Secretary of State of Texas (5/15/2004) and the United States Patent Office (3/31/2004), SUN's use of the mark "BZO" had priority over Defendants' mark and that SUN was the exclusive owner of the mark and Defendants should cease and desist from using the mark "BZO" and the colorable imitation "BFS" on their exact duplicates of his automotive wheel designs. Defendants have refused and continue to refuse to heed SUN's request all to the damage of SUN which are not determinable at this time.

X.

Defendants, while having actual knowledge of SUN's mark and wheel styles, have attempted to pass off their automotive wheels as those of SUN by failing to distinguish their product from that of SUN, by accepting orders obviously intended for SUN, by imitation of SUN's automotive wheel styles, and by using product literature designed and printed by Sun.  SUN is informed and believes that Defendants' intent in adopting the mark "BZO" was and is to fraudulently appropriate the business and goodwill of SUN by passing off automotive wheels manufactured by Defendants as those of SUN.

XI.

The Defendants have threatened irreparable harm to the SUN property and rights by:

1.      Using in connection with the sale and advertising of automotive wheels in Texas, or applying to such automotive wheels sold in Texas, the mark employing the words "BZO" or a colorable imitation thereof;

2.      Using the automotive wheel designs the Defendants acquired wrongfully from Plaintiff;

3.      Using the customer list the Defendants wrongfully acquired from the SUN; and

4.      For damages for breach of contract and unfair trade practices in the sum and excess of the minimum jurisdictional limits of this Court; and

5.      Representing to others that the Defendants have rights to the trademark "BZO" or using the colorable imitation "BFS" on the wheel designs belonging to SUN.

8

XII.

SUN has and will continue to be damaged and injured by the Defendants' conduct by loss of customers, loss of goodwill and the loss of and permanent injury to the value of the trademark "BZO".

XIII.

## Unfair Competition

The actions of the Defendants are both willful and tortuous. The Defendants had intentionally stolen, converted and misappropriated proprietary information belonging to Tielin and SUN through deceptions, misrepresentations and breaches of contract. The Defendants have deliberately copied the Plaintiffs' trademark, the designs of its wheels, obtained its customer list and caused SUN and Tielin to materially change their position in reliance on the agreements that they had with the Defendants. The Defendants' behavior is intentional, flagrant and designed to cause damage to the Plaintiffs.

Tielin and SUN have acted to their detriment in reasonable reliance on the promises and resolutions of the Defendants. These promises by the Defendants were designed to induce or to encourage Tielin and SUN to perform in reliance thereon. The actions that Tielin and SUN took were both known and accepted by the Defendants to their benefit and to the Plaintiffs' detriment.

XIV.

## Temporary Injunction

In order to preserve the status quo and the property and rights of SUN during the pendency of this action, Defendants should be cited to appear and show cause why they should not be temporarily restrained under V.T.C.A., Bus. & C. § 16.26 (c) during the

9

pendency of this action, from using the trademark "BZO" or a colorable imitation thereof; passing off or selling the automotive wheel designs of Defendants as those of SUN and vice versa; from interfering in the management of Sun's Motorcar Group, LLC.

WHEREFORE, PREMISES CONSIDERED, SUN'S MOTORCAR GROUP, LLC, (SUN) Plaintiff herein, requests that:

1.   Defendants be cited to appear and show cause and that after hearing a temporary injunction be issued enjoining Defendants and Defendants' agents, servants, and employees from directly or indirectly using in connection with the sale and advertising of automotive wheels in Texas, or applying to such automotive wheels sold in Texas, any mark employing the words "BZO" or a colorable imitation thereof; that Defendants be enjoined from using the automotive wheel designs they acquired wrongfully from Tielin Sun; that the Defendants be enjoined from participating in the management of Sun's Motorcar Group, LLC; that the Defendants be enjoined from using the customer list they wrongfully acquired from the Plaintiffs; and that the Defendants be enjoined from representing to others that they have rights to the trademark "BZO" or use the colorable imitation "BFS" on the wheel designs belonging to Plaintiffs.

2.   A permanent injunction be ordered on final trial of this cause, enjoining Defendants and Defendants' agents, servants and employees from directly or indirectly using in connection with the sale and advertising of automotive wheels in Texas, or applying to such automotive wheels sold

in Texas, any mark employing the words "BZO" or a colorable imitation thereof; that Defendants be enjoined from using the automotive wheel designs they acquired wrongfully from Tielin Sun; that the Defendants be enjoined from participating in the management of Sun's Motorcar Group, LLC; that the Defendants be enjoined from using the customer list they wrongfully acquired from the Plaintiffs; and that the Defendants be enjoined from representing to others that they have rights to the trademark "BZO" or use the colorable imitation "BFS" on the wheel designs belonging to Plaintiffs.

3.    Judgment for damages under V.T.C.A., Bus. & C. § 16.26 (c)(1) be rendered against Defendants for a sum in excess of the minimum jurisdictional limit of the Court.

4.    An order be executed by this Court that the infringing reproductions, counterfeits, copies or colorable imitations in the possession of or under the control of the Defendants be delivered to an officer of this Court; delivered to SUN; or destroyed.

5.    For prejudgment and postjudgment interest as provided by law.

6.    For reasonable attorney's fees.

7.    For costs of suit.

8.    For such other and further relief to which SUN may be justly entitled.

Respectfully submitted,

**Ray & Associates**

Arne M. Ray
SBN: 16595400
5100 Westheimer, Suite 115
Houston, Texas 77056
(713) 627-7111
(713) 627-7110 Fax
Attorney for Sun's Motorcar
Group, LLC

2004-45475

CAUSE NO. _____

| | | |
|---|---|---|
| SUN'S MOTORCAR GROUP, LLC | § | IN THE DISTRICT COURT OF |
| and TIELIN SUN | § | |
| | § | |
| VS. | § | HARRIS   COUNTY,   TEXAS |
| | § | |
| QRS AUTO GROUP, INC., and | § | |
| SHAO GUANG HE A/K/A DAVID HO | § | |
| and GUANGZHOU KAISI | § | |
| INVESTMENT CO., LTD. A/KA | § | |
| GUANGZHOUSHI KAISI TOUZI | § | |
| YOUXIAN GONGSI | § | _____ JUDICIAL DISTRICT |

## ORDER SETTING HEARING DATE

ON THIS DAY, Sun's Motorcar Group, LLC and Tielin Sun, Plaintiffs in the above entitled and numbered cause, presented an application for temporary injunction in due form and manner.

ACCORDINGLY, IT IS ORDERED that Plaintiffs' application for temporary injunction, as contained in such petition, be heard before this Court at _____ o'clock ____.m., on the _____ day of _____, 2004, in the courtroom of the _____ in the Civil Courts Building in Houston, Harris County, Texas.

IT IS FURTHER ORDERED that the clerk of this Court issue notice for service on the Defendants, QRS Auto Group, Inc., Shao Guang He a/k/a David Ho, and Guangzhou Kaisi Investment Co., Ltd. notifying them of the time and place of the hearing above described, and commanding them to appear and show cause why the temporary injunction prayed for in Plaintiffs' petition should not be granted.

SIGNED THIS _____ day of _____, 2004.

_____

JUDGE PRESIDING

13

# 企业法人营业执照

（副　本）

注册号　440101...0859

名称　广州市凯思投资有限责任公司

法定代表人　辛运

住所　广州市天河区天河北路183号大都会广场48楼

注册资本　壹亿元

企业类型　有限责任公司

经营范围　自有资金投资、物业管理、电子计算机、硬件开发、生产、电子产品技术开发、商品信息咨询服务、零售贸易（国家专营专控商品除外）、代办运输。*

成立日期　一九九九年十一月十七日

营业期限　自　　　　至

登记机关　广州市工商行政管理局

二〇〇二 年 十二 月 二 日

说　明

1. 《企业法人营业执照》是企业取得企业法人资格和合法经营的凭证。
2. 《企业法人营业执照》分正本和副本，正本和副本具有同等法律效力。
3. 营业执照正本应在住所或营业场所的醒目位置悬挂。企业法人可根据业务需要，向登记机关申请核发营业执照副本。
4. 企业法人在登记注册事项发生变化时，应向原登记机关申请变更登记。除登记机关外，其他任何单位和个人均不得扣留、涂改、出租、出借、转让、吊销和出售。
5. 企业法人应在核准登记的经营范围内从事经营活动。
6. 每年一月一日至四月三十日，登记机关对企业执照，副本，进行年度检验。
7. 企业注销时，应交回营业执照正本、副本，营业执照登记机关不向回邮自行失效。

企 业 法 人 年 检 情 况

（验证）2001年
企业营业执照
2002年检 (201...)

【每年一月一日至四月三十日，到登记机关申报年检，不再另行通知】



EXHIBIT "A"



Office of the Secretary of State
Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697

# APPLICATION FOR REGISTRATION
# OF TRADEMARK OR SERVICE MARK

The undersigned applicant has adopted and used, and is now using, a certain trademark or service mark in Texas and hereby makes application for registration of such mark, in accordance with Chapter 16 of the Texas Business & Commerce Code.

1.    Applicant: SUNS MOTORCAR GROUP, LLC

2.    Address:  6814 GANT ROAD, SUITE 112

      City:      HOUSTON   State: TEXAS   Zip: 77066

3.    Applicant is incorporated or organized as a LIMITED LIABILITY COMPANY
      and is incorporated or organized under the laws of TEXAS

4.    Describe the mark (words and/or design) SHOWN ON THE ATTACHED DRAWING SHEET:
      A      stylized  composite  of  three  letters  "B"  and  "Z"  and  "O"  used  to
      distinguish specialized vehicle parts and accessories.

5.    Description of goods or services in connection with which the mark is being used:  (BE SPECIFIC)
      The mark is used to identify custom wheels used on cars, trucks and motorcycles (specific pictures are enclosed), and is used in literature packaged together with the wheel products to assist consumers in the identification and care of the products (product care information enclosed with the application).

6.    The manner in which the mark is being used (labels, tags on the goods, etc; OR brochures, newspapers advertising the services, etc.):  (A SAMPLE IS ATTACHED)
      The "mark" is permanently etched into the product through the manufacturing process. As part of the marketing of the product as so marked, the "mark" will appear on invoices, name cards,  promotional displays to insure consumer confidence in the

EXHIBIT "B"

7.     Number and title of the class of goods or services:_____

       (Do not list more than one class. See instruction 7.)

       Number "Class 12"; Vehicles because the products are exclusively for use with motor vehicles

8.     Date mark first used by applicant (BOTH A & B MUST BE COMPLETED):

       (a) Anywhere:  November 15, 2003

       (b) In Texas:    November 15, 2003

9.     Applicant hereby appoints the Secretary of State of Texas as its agent for service of process only in suits relating to the registration which may be issued if the applicant is or becomes a nonresident individual, partnership or association or foreign corporation, limited partnership, or limited liability company without a certificate of authority to do business in this state or cannot be found in this state.

10.     Applicant is the owner of the mark and, to the best of the applicant's knowledge, no other person is entitled to use the mark in this state in the identical form used by applicant, or in a form that is likely, when used in connection with the goods or services, to cause confusion or mistake, or to deceive, because of its resemblance to the mark used by the applicant.

11.     [✓] A drawing of the mark is enclosed.

12.     [ ] Two examples of advertising are enclosed (if mark is used in connection with services). OR

       [✓] Two actual tags, labels, or actual product packaging are enclosed (if mark is used in connection with a distributed product).

Executed on this 15th day of May, 2004.

                        SUNS MOTORCAR GROUP, LLC

                        TIELIN SUN

                        President



# UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Jul 1 04:40:27 EDT 2004*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP | PREV LIST |
| CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout    Please logout when you are done to release system resources allocated for you.

Start   List At:              OR   Jump   to record:          **Record 1 out of 2**

**Check Status**  *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | BZO |
| **Goods and Services** | IC 035. US 100 101 102. G & S: automotive accesories. FIRST USE: 20031001. FIRST USE IN COMMERCE: 20031001 |
| **Mark Drawing Code** | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| **Serial Number** | 78394164 |
| **Filing Date** | March 31, 2004 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) Custom Wheels Wholesale, Inc CORPORATION TEXAS 6814 Gant Rd, Suite 124 Houston TEXAS 77066 |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | | BROWSE DICT | TOP | HELP | PREV LIST |

EXHIBIT "C"

# TRADEMARK DRAWING SHEET



## <u>Drawing Instructions</u>:

The applicant also must submit with the application a "drawing sheet" that shows the mark exactly as it appears in the specimen accompanying the application and exactly as it is described in paragraph 4 of the application. If the mark includes a design, a drawing of the entire proposed mark (in clean, uniform black lines) must be attached to the application. If the mark described in the application consists only of a word, letter or numeral, or any combination thereof, and if the mark is not depicted in a special form, the mark may be typed in capital letters on the drawing sheet.

The Office of the Secretary of State does not discriminate on the basis of race, color, national origin, sex, religion, age or disability in employment or the provision of services.



# UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Jul 1 04:40:27 EDT 2004*

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP | PREV LIST

CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

Logout    Please logout when you are done to release system resources allocated for you.

Start  List At:          OR  Jump  to record:          **Record 2 out of 2**

Check Status   *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

# BZO

| | |
|---|---|
| **Word Mark** | **BZO** |
| **Goods and Services** | IC 012. US 019 021 023 031 035 044. G & S: WHEEL RIMS FOR VEHICLES. FIRST USE: 20031001. FIRST USE IN COMMERCE: 20031001 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78363969 |
| **Filing Date** | February 6, 2004 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) QRS Auto Group Inc. CORPORATION TEXAS 5825 W. Sam Houston Parkway North, Suite 809; Houston TEXAS 77041 |
| **Attorney of Record** | Michael S. Neustel |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

EXHIBIT "D"

# RAY & ASSOCIATES

**ATTORNEYS AT LAW**
5100 WESTHEIMER. SUITE 115
HOUSTON. TEXAS 77056

(713) 627-7111
FAX (713) 627-7110

July 1, 2004

*VIA FACSIMILE 713-988-8846 and*
*VIA CERTIFIED MAIL/RRR*

Mr. Craig Corsini
Attorney at Law
5800 Ranchester, Suite 200
Houston, TX  7036

RE:    Your client, QRS Auto Group, Inc. ("QRS") and
       Shao Guang He a/k/a David Ho ("Ho")

Dear Mr. Corsini:

As attorney for QRS, my client, Sun's Motorcar Group, LLC, is putting QRS Auto Group, Inc. and Shao Guang He a/k/a David Ho on notice that my client's mark "BZO" is registered with the Secretary of State of Texas and the United States Patent Office and my client is the exclusive owner of said mark.  It has also come to my client's attention that QRS and Mr. Ho are also using a duplicate imitation of their wheels that are exactly the same as my client's wheels but substituting the letters "FST" for "BZO".  This colorable imitation of my client's mark is likely to cause confusion or mistake as to the source or origin of the automotive wheels sold by my client because of the similarity of the letters used and their identical automotive wheel styles is likely to cause Sun's customers to become confused as to the source and sponsorship of said automotive wheels.

QRS and Mr. Ho should cease and desist from using the mark "BZO" and should cease and desist from using the identical wheels originated by BZO with the colorable imitation substituting the letters "FST" on BZO's automotive wheels.

I will be contacting you by telephone either this afternoon or tomorrow to discuss this matter more fully.

Very truly yours,

Arne M. Ray

EXHIBIT "E"

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Craig Corsini
Attorney at Law
5800 Ranchester, Suite 200
Houston, TX. 77036

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _SD Hutchins_   ☑ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
_SD Hutchins_   7-2-04

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7002 0460 0001 5995 6826

PS Form 3811, August 2001   Domestic Return Receipt   102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

## OFFICIAL USE

| | |
|---|---|
| Postage | $ .37 |
| Certified Fee | 2.30 |
| Return Receipt Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.42 |

Postmark Here

Sent To Mr. Craig Corsini
Street, Apt. No.; or PO Box No. 5800 Ranchester, Ste. 200
City, State, ZIP+4 Houston TX. 77036

PS Form 3800, January 2001   See Reverse for Instructions

7002 0460 0001 5995 6826

NO. <u>2004-45475</u>

| | | |
|---|---|---|
| SUN'S MOTORCAR GROUP,<br>LLC AND TIELIN SUN<br>Plaintiffs, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| V. | §<br>§ | 113th JUDICIAL DISTRICT |
| QRS AUTO GROUP, INC.,<br>SHAO GUANG HE A/K/A<br>DAVID HO AND GUANGZHOU<br>KAISI INVESTMENT CO.,<br>LTD. A/K/A GUANGZHOUSHI<br>KAISI TOUZI YOUXIAN<br>GONGSI<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | H-04-4736<br><br>OF HARRIS COUNTY, TEXAS |

## <u>DEFENDANTS' ORIGINAL ANSWER AND COUNTERCLAIM</u>

Defendants, QRS Auto Group, Inc. ("QRS"), Shao Guang He A/K/A David Ho ("Ho") and Guangzhou Kaisi Investment Co., Ltd. A/K/A Guanzhoushi Kaisi Touzi Youxian Gongsi ("Kaisi"), file the captioned and show the Court:

### A.  <u>GENERAL DENIAL</u>

1.  Defendants deny each and every allegation of Plaintiffs' Original Petition, and demand strict proof thereof as required by the Texas Rules of Civil Procedure.

### B.  <u>AFFIRMATIVE DEFENSES</u>

2.  Even if plaintiff proves the allegations in its petition, defendants are not liable to plaintiff under the theory of estoppel.

1

3. Even if plaintiff proves the allegations in its petition, defendants are not liable to plaintiff because of plaintiff's violation of the clean hands doctrine.

## C. <u>FACTS</u>

4. In the first half of 2003, plaintiff Tielin Sun ("Sun") and Mr. Yu Gang ("Gang"), a representative of Kaisi, met and began to discuss the possibility of a joint venture between Kaisi and/or a subsidiary thereof and plaintiff Sun and/or a company owned by Sun.

5. In July 2003, Kaisi purchased QRS from Sun and made tentative plans to combine this company with a third company, owned by Sun, to establish a company to be called Sun's Motorcar Group LLC in order to carry on a used car business in the form of a joint venture.

6. During the months of September and October 2003, QRS delegated to Ho the right to order wheels from Gacosia Co. China ("Gacosia") in anticipation of the planned joint venture.

7. In November 2003, on behalf of Gacosia, Gang attended an automobile wheel exhibition in Las Vegas, Nevada and, thereafter, traveled to Houston, Texas to further discuss the planned joint venture arrangement with Sun. The negotiations lasted one week.

8. During the negotiations, Gang, Sun and Ho discussed the planned joint venture

arrangement but were unable to obtain consensus on many aspects of the planned joint venture.

9. In addition, prior to the joint venture negotiations, Gang had forwarded paperwork to Ken Rothey ("Rothey"), the Texas attorney for Kaisi, to review in anticipation of the joint venture negotiations. The paperwork consisted of documents relating to the anticipated creation of the joint venture and Gang expected Rothey to review the same and assist Kaisi with the anticipated creation of the joint venture. However, when Gang arrived in Houston in late 2003, he discovered that Rothey had developed a close business relationship with Sun and had even agreed to sell wheels for Sun at a Sunday flea market. Consequently, Gang and Kaisi doubted the trustworthiness of Rothey, which, in light of all the facts, caused them to further question the wisdom of entering into a joint venture arrangement with Sun.

10. Additionally, because Kaisi would be required, as part of any joint venture arrangement, to obtain and invest $1,000,000.00 of its own assets into the new corporation to be formed for the joint venture, Kaisi requested that Sun provide Gang with financial statements demonstrating the solvency of Sun and Sun's Motorcar Group LLC since Sun claimed his company was worth $600,000.00 and Kaisi wanted to be sure of the solvency of Sun's Motorcar Group, LLC before making its investment. However, Sun refused to provide any such financial statements and

3

disclosures even though such information was requested from him on multiple occasions. Sun did promise to release a list of his assets and their approximate value to Gang but never carried out this promise. Defendant needed to receive this information before committing to a joint venture arrangement and Sun's resistance in this matter caused Defendant to further doubt the wisdom of entering into a joint venture arrangement with Sun.

11. Based on the foregoing, the parties failed to reach an agreement with respect to the formation of a joint venture.

12. Because an agreement on the joint venture arrangement could not be reached, Gang, Sun and Ho agreed that rather than going forward with the planned joint venture, a different arrangement would be implemented whereby Kaisi and QRS would deliver wheels to Sun's Motorcar Group LLC and Sun's Motorcar Group LLC would sell wheels on behalf of QRS. Under this arrangement, which was verbally agreed to, QRS would purchase wheels, deliver them to Sun's Motorcar Group LLC and Sun's Motorcar Group LLC would then be responsible for selling the wheels with the individual purchasers of the wheels paying directly to QRS capital plus profit. Thereafter, the profit would be divided according to the ration of 60% to QRS; 20% to Sun's Motorcar Group LLC; and 20% to Ho.

13. At the beginning of this cooperative business arrangement, QRS delivered to

4

Sun's Motorcar Group LLC $210.000.00 worth of wheels, which figure includes both cost base of the wheels, $161,005.00; plus the profit base of the wheels, $48,995.00. Attached as Exhibit A and incorporated by reference is a copy of the QRS' packing list of wheels shipped to Sun's Motorcar Group, LLC.

14. On or around January 23, 2004, Sun and Sun's Motorcar Group LLC sold wheels to New Horizon Management Corporation A/K/A Rollos ("Rollos") wheels for the total amount of $114,700.00. Rollos, in turn, issued and delivered a check to QRS for $57,350.00 as down payment for the wheels purchased with the remaining payment to be made thirty days later. QRS subsequently cashed and deposited the check into its account. Attached as Exhibit B and incorporated by reference is a copy of the check received by QRS from Rollos.

15. Thereafter, Rollos delivered a second check to QRS in the amount of $57,350.00 with instructions that the check should not be cashed for thirty days (the "Thirty Day Period"). When the check was cashed after the Thirty Day Period, however, the check did not clear as a stop payment had been placed on the check. Attached as Exhibit C and incorporated by reference is a copy of the second check from Rollos with notice of stop payment stamped on the check.

16. During the Thirty Day Period described in paragraph 15 above, per Rollos, Sun contacted Rollos and unilaterally requested that Rollos pay Sun's Motorcar

Group LLC directly for the QRS wheels and avoid making any payments to QRS directly or otherwise. Thereafter, Rollos began making payments for QRS wheel purchases to Sun and Sun's Motorcar Group LLC directly as evidenced by a series of checks made payable to Sun, Sun's Motorcar Group LLC and the bank account of Sun and/or Sun's Motorcar Group LLC. Attached as Exhibits D, E, F, G, H and I and incorporated by reference are checks issued by Rollos to Sun, Sun's Motorcar Group and the bank account of Sun and/or Sun's Motorcar Group LLC.

17. Following the events described in paragraphs 14 through 16 above, QRS became increasingly concerned about the $152,650.00 ($210,000.00 - $57,350.00) in wheels delivered to Sun's Motorcar Group LLC but for which QRS had not been paid Subsequently, QRS notified Sun of its concerns. In response, Sun proposed a solution: Sun suggested that the parties would settle the issue of the $152,650.00 in capital (i.e., the wheels) first and then calculate the profits from the sale of the wheels later. Gang and Ho agreed to this plan. However, since this agreement, Sun has failed to make any payments for wheels delivered to Sun's Motorcar Group LLC and not already paid for and QRS has received no payments for the wheels other than the initial payment by Rollos described in paragraph 14 above.

18. On April 5, 2004, Sun unilaterally declared that, as of that date, Sun and Sun's Motorcar Group LLC owed QRS only $32,525.00 and, accordingly, Sun and Sun's

Motorcar Group LLC issued a check made payable to QRS in the amount of
$32,525.00. However, when QRS attempted to deposit the check, the check did not
clear. Attached as Exhibit J and incorporated by reference is a copy of the check for
$32,525.00 from Sun's Motorcar Group LLC made payable to QRS but which did not
clear. Attached as Exhibit K is a handwritten note with translation from Sun to Gang,
acknowledging an indebtedness of $160,675.00 (i.e., the cost base of the wheels), but
claiming that: (1) Ho personally owed $40,000.00 to Sun; (2) a down payment of
$57,350.00 to QRS had occurred; and (3) the existence of $30,800.00 in inventory
still in Sun's possession and not yet sold. Thus, by calculation, $160,675.00 -
$57,350.00 - $40,000.00 - $30,800.00 = $32,525.00. Defendants' dispute that any of
the $160,675.00 owed by plaintiffs to defendants is subject to offset.

19. Since the initial payment from Rollos in the amount of $57,350.00 for Rollos'
first wheel purchase, QRS has received no payments for the wheels it delivered to
Sun's Motorcar Group LLC.

20. On June 7, 2004, a demand letter was sent to Sun and Sun's Motorcar Group
LLC by certified mail demanding payment of $160,000.00, which figure represented
the approximate balance owed by Sun and/or Sun's Motorcar Group LLC for the
wheels plus interest and expenses incurred to collect the debt. Attached as Exhibit L
and incorporated by reference is a copy of the demand letter together with the

7

certified mailing receipts. Since that date, however, no payments have been received for the wheels delivered to Sun's Motorcar Group LLC (except for Rollos' down payment of $57,350.00 as described in paragraph 14 above) and Sun has refused to provide an accounting of the inventory.

21. Although Sun claims to have been damaged by the creation of the new entity in which he alleges (on page 3 of his petition) that he invested $600,000.00, in reality none of the defendants have any control or ownership or interest in the new corporation and never did; the control remaining entirely with Sun at all times. Additionally, neither Sun nor Sun's Motorcar Group LLC provided defendants with a customer list; defendants have always possessed their own customer list, which includes Rollos, a customer that defendants knew before Plaintiff did. Lastly, Gang never signed any documents to set up Sun's Motorcar Group, LLC and Gang was never informed that QRS was made a partner or manager with Sun or Sun's Motorcar Group, LLC until Gang and QRS received a copy of plaintiff's petition from opposing counsel.

22. Defendant is in the business of the marketing, selling and distribution of automotive accessories; plaintiff is in the business of the marketing, selling and distribution of automotive accessories.

23. Defendant is the owner of the trademark BZO and, since October 1, 2003, has

8

continuously used that mark in connection with the sale and distribution of automotive wheel rims.

24. Among the products and services that plaintiff sells are BZO wheel rims, also known as BZO wheels.

25. The conception and design of the BZO wheel design and trademark originated from Gacosia and from no other entity, whether in China or elsewhere, and by agreement QRS has the exclusive right to use the mark in the United States and to register the mark accordingly with the United States Trademark and Patent Office ("USPTO").

26. On February 6, 2004, QRS filed its trademark registration for the registration of "BZO" as a trademark with the USPTO. Consequently, QRS is entitled to the exclusive use of the trademark in commerce in Texas and elsewhere in connection with the sale and manufacture of automotive wheels; notwithstanding plaintiffs' claims. Attached as Exhibit M and incorporated by reference is a copy of the USPTO Trademark Electronic Search System ("TESS") tracking sheet confirming that QRS filed its application for the BZO trademark with the USPTO on February 6, 2004.

27. On March 31, 2004, Custom Wheel Wholesale, Inc., a Texas Corporation with the same or virtually the same address as Sun's Motorcar Group LLC (See Plaintiff's Original Petition paragraph I), to wit, 6814 Gant Rd., Houston, Texas 77066, and

9

ostensibly an affiliate or subsidiary company of Sun's Motorcar Group LLC, filed an application with the USPTO for the BZO **service** mark. Attached as Exhibit N is a copy of the USPTO TESS sheet confirming that Custom Wheels Wholesale, Inc. of 6814 Gant Rd., Suite 124, Houston, Texas 77066, filed its service mark application for the mark "BZO" with the USPTO on March 31, 2004.

28.  As of November 17, 2004, only two applications for the mark "BZO" had been filed with USPTO and only one of the applications (the QRS application) was for the BZO trademark. Attached as Exhibit O is a copy of TESS tracking sheet for trademark applications for the mark "BZO" as of November 17, 2004. The TESS sheet confirms that as of November 17, 2004 only two applications had been made with the USPTO for use of the BZO mark. Exhibits M and N confirm that the QRS application is for a trademark and the Sun application is for a service mark and that Sun's application was filed with USPTO subsequent to the filing by QRS of its trademark application with USPTO. Attached and incorporated by reference as Exhibits Q and R are the two USPTO status information sheets for the parties' respective trademark and service applications. The status information sheets are both dated December 6, 2004. Exhibit Q confirms that final review of QRS' application has been completed and that the QRS application will be published for opposition. Exhibit R confirms that a letter from the examining attorney has been sent to plaintiff

10

requesting additional information and/or making an initial refusal.

29. Based on the foregoing, QRS filed its application for the BZO trademark with the USPTO prior to any other individual, company, corporation, partnership, entity, etc. and plaintiff has filed an application for a service mark and not a trademark. In addition, plaintiff's registration of the mark with the Texas Secretary of State's Office does not give plaintiff any rights of exclusivity or ownership, said rights belonging entirely to QRS.

30. On July 14, 2004, defendant QRS, via its attorney, faxed and mailed a letter to opposing counsel, which, among other things, instructed opposing counsel's clients to "cease and desist" using the "BZO" mark. Attached as Exhibit P and incorporated by reference is a copy of the cease and desist letter sent to opposing counsel via fax together with the facsimile confirmation page. Plaintiffs have refused and continue to refuse to heed QRS' request all to the damage of QRS which are not determinable at this time.

31. In addition, defendant QRS used the BZO mark in interstate commerce prior to the filing of its USPTO registration on February 6, 2004; notwithstanding plaintiff's claims. Exhibit M confirms that QRS began using the mark as of October 1, 2003.

32. Defendant has used and promoted its BZO mark and, as a result of that

11

extensive use and promotion, defendant's mark has acquired a favorable reputation to consumers as an identifier and symbol of defendant and its products, services and goodwill. Accordingly, defendant is the owner of broad common-law and federal trademark rights in the mark.

33.  Defendant continues to invest substantial sums in promoting its products and services offered under the mark.

34.  Despite the limitless other marks plaintiff could have chosen, it wrongfully appropriated a mark identical to defendant's BZO mark, without permission or other authorization from Defendant.

35. QRS has never used the label "BFS" on any of its wheels. QRS has used the label "FST" on its wheels, which is an entirely separate product line.

36.  Defendants attach affidavits to this answer and counterclaim to establish facts not apparent from the record and incorporate them by reference.

## D.  DEFENDANT'S COUNTERCLAIM – COUNT 1

37.  Plaintiff is liable to defendant QRS by plaintiff's breach of oral contract with defendant QRS.

38.  Defendants restate and incorporate by reference the statements set forth in paragraphs 4 through 36.

39.  Plaintiffs have not performed their contractual obligations. Specifically,

12

plaintiffs have not paid defendant QRS for the wheels delivered or arranged to have

the individual purchasers of the wheels deliver payment to defendant QRS and have

not provided defendant QRS with its share of the profits from the sale of the wheels

nor have plaintiffs provided an accounting to defendant QRS for such sales.

## E. DEFENDANT'S COUNTERCLAIM – COUNT 2

40.  In the alternative to the other counts, plaintiff is liable to defendant QRS for

plaintiff's tortious interference with QRS's tangible property.

41.  Defendants restate and incorporate by reference the statements set forth in

paragraphs 4 through 36.

42.  The actions of plaintiffs are both willful and tortious.

43.  Plaintiffs have intentionally stolen, converted and misappropriated property

belonging to QRS.

## F. DEFENDANT'S COUNTERCLAIM – COUNT 3

44.  In the alternative to the other counts, plaintiffs are liable to defendants under

the doctrine of fraud.

45.  Defendants restate and incorporate by reference the statements set forth in

paragraphs 4 through 36 above.

46. Sun knowingly made false representations to defendants by assuring

defendants that payments for wheels purchased would be directed to defendants and

profits would be divided pursuant to the ratio described in paragraph 9. This fraud was material to plaintiffs' scheme of converting and/or misappropriating defendants' property and the proceeds obtained through the sale of said property.

### G. DEFENDANT'S COUNTERCLAIM – COUNT 4

47. In the alternative to the other counts, plaintiffs are liable to defendant QRS under the doctrine of quantum meruit.

48. Defendants restate and incorporate by reference the statements set forth in paragraphs 4 through 36.

49. Defendants provided valuable materials to plaintiffs (i.e., wheels), which plaintiffs accepted and the materials were furnished under circumstances that reasonably notified plaintiffs that defendant QRS expected to be paid and defendant QRS was not paid for said materials.

### H. DEFENDANT'S COUNTERCLAIM – COUNT 5

50. In the alternative to the other counts, plaintiff is liable to defendant QRS under the doctrine of promissory estoppel.

51. Defendants restate and incorporate by reference the statements set forth in paragraphs 4 through 36 above.

52. Plaintiffs made a promise to defendant to pay defendants or to arrange to have individual purchasers pay defendants for the wheels purchased and to divide the

14

profits from the sales of the wheels as described in paragraph 9, supra; it was foreseeable to plaintiff that defendant would rely on that promise; and defendants did rely on that promise to their detriment.

## I. DEFENDANT'S COUNTERCLAIM – COUNT 6

53. Plaintiffs are liable to defendant QRS under the doctrine of unfair competition.

54. Defendants restate and incorporate by reference the statements set forth in paragraphs 4 through 36 above.

55. Plaintiffs are now using the mark "BZO" in Texas and in interstate commerce, a true and correct copy of which is included and attached as Exhibit "L" and incorporated by reference. The mark being used by plaintiffs, comprised of the letters "BZO", is the exact imitation of and phonetically similar to defendant QRS' mark "BZO", which was federally registered on February 6, 2004 by QRS. The mark used by plaintiffs, comprised of the letters "BZO", is the exact imitation of and phonetically identical to defendant QRS' mark; "BZO."

56. Plaintiffs use of a mark and unique wheel products that are identical to QRS mark in connection with the sale and advertising of automotive wheels in Texas or elsewhere is likely to deceive and cause confusion or mistake as to the source or origin of the automotive wheels sold by QRS because the similarity of words an